**SAN JUAN TRADING CO., Inc., v. SANCHO, Treasurer.**

**SANCHO, Treasurer of Puerto Rico, v. SAN JUAN TRADING CO., Inc.**

**Nos. 3567, 3568.**

Circuit Court of Appeals, First Circuit.

Oct. 16, 1940.

L. E. Dubon, of San Juan, P. R., for San Juan Trading Co.

William Cattron Rigby, of Washington, D. C. (George A. Malcolm, of San Juan, P. R., and Nathan R. Margold, of Washington, D. C., on the brief), for Sancho, Treasurer.

E. T. Fiddler, of San Juan, P. R., amicus curiæ.

Before MAGRUDER and MAHONEY, Circuit Judges, and PETERS, District Judge.

MAHONEY, Circuit Judge.

The plaintiff, the San Juan Trading Co., Inc., brought this action to recover from the Treasurer of Puerto Rico the sum of $26,400 paid under protest and collected as excise taxes due and levied upon 88,000 gross of 144 boxes each of uncolored square stick matches packed in wooden outers or shucks containing not less than 25 but not more than 50 sticks per box, brought by the plaintiff into Puerto Rico from the City and State of New York, to be disposed of in Puerto Rico. The said matches had originally been produced in Sweden and had been imported into the United States after August 5, 1935.

The Treasurer levied and collected the tax under the provisions of subdivision 14 of Section 16 of Act No. 85, approved by the Legislature of Puerto Rico, August 20, 1925 (commonly known as the In-

ternal Revenue Law of Puerto Rico) as amended by Act No. 146, § 16, subd. 7, approved May 9, 1938.[1] In substance, insofar as here relevant, the subsection taxes uncolored round stick matches (when packed in a wooden box containing not less than 25 nor more than 50 matches) at 10 cents per gross of 144 boxes while uncolored square stick matches packed in the same way are taxed at 30 cents per gross. Matches packed in other than wooden boxes, regardless of whether round or square, are taxed the same, a difference in taxation only being made dependent on whether the box contained not less than 25 nor more than 50 matches or whether it had less than 25 or more than 50. Paper or cardboard, wooden, and sperm or wax matches were also classified for different rates of taxation. By Act No. 14, approved September 9, 1938, the statute was amended to tax wooden matches, whether round or square, packed in wooden boxes containing less than 25 or more than 50 matches. These had been left untaxed in the previous act.

Plaintiff and defendant stipulated that the only wooden matches produced in Puerto Rico are round stick matches made by the Pan American Match Company, a Puerto Rican corporation; that the only other round stick matches sold in Puerto Rico are made in the continental United States and recently in Sweden; that the round matches are die-cut from prepared blocks of soft "White Pine", whereas square matches are severed directly from sheets of hardwood known as "Aspen"; that the cost to Swedish manufacturers of producing round stick matches is at present greater than that of producing square stick matches, though it cannot be determined whether it will remain so; and that the retail price for both Swedish and Puerto Rican matches is one cent per box.

The plaintiff challenged the validity of subdivision 7 of Section 16, supra, on the grounds that by unwarrantedly discriminating between round and square matches, the subdivision violates the rights secured to the plaintiff by the V and XIV Amendments to the Constitution of the United States, and Section 2, par.1, of the Organic Act of Puerto Rico, 39 Stat. 951 (1917), 48 U.S.C.A. § 737, in that it deprives the plaintiff of its property without due process of law and denies it the equal protection of the laws; contravenes Article VI of the Reciprocal Commercial Trade Agreement entered into between the United States and the Kingdom of Sweden and signed May 25, 1935, 49 Stat. 3759, exempting imports from Sweden from internal revenue taxes other or higher than those payable on like articles of national or other foreign origin, and also violates the provisions of Section 2, par. 22, of the Organic Act of Puerto Rico, supra, at page 952, 48 U.S.C.A. § 737, to the effect that taxation in the Island shall be uni-

---

[1] "Section 16. There shall be collected and paid, once only, an internal revenue tax on each of the following articles:

"7. Matches: On matches, whether sulphur, safety, friction, or fuses, or by whatever name known, sold, manufactured, transported, transferred, used, or consumed, in, or brought into, Puerto Rico in boxes with wooden shucks, containing not less than twenty-five (25) nor more than fifty (50) matches per box, there shall be levied and collected an excise tax as follows:

"(a) Matches having uncolored square sticks, thirty (30) cents a gross of one hundred and forty-four boxes;

"(b) Matches having colored, fancy square sticks, thirty-six (36) cents per gross of one hundred and forty-four boxes;

"(c) Matches having uncolored round sticks, ten (10) cents a gross of one hundred and forty-four boxes;

"(d) Matches having colored, fancy round sticks, fifteen (15) cents a gross of one hundred and forty-four boxes.

"When the matches are in boxes with other than wooden outers or shucks, containing not less than twenty-five (25) matches nor more than fifty (50) matches per box, there shall be levied and collected an excise tax of thirty-six (36) cents a gross of one hundred and forty-four boxes; when the box contains less than twenty-five (25) matches or more than fifty (50) matches there shall be levied and collected an excise tax of six (6) cents on each thousand matches or fraction of a thousand.

"On paper or cardboard matches in books of twenty (20) matches each, there shall be levied and collected an excise tax of five (5) cents on each thousand matches or fraction of a thousand. Books containing more than twenty (20) matches or less than twenty (20) matches, shall pay an excise tax of six (6) cents on each thousand matches or fraction of a thousand. * * *

"On sperm or wax matches there shall be levied and collected an excise tax of five (5) cents on each thousand matches or fraction of a thousand."

form, and the provisions of Section 3 thereof as amended, 44 Stat. 1418 (1927), 48 U.S.C.A. § 741a, that there must be no discrimination between articles imported from the United States or foreign countries and similar articles of domestic origin.

The defendant admitted levying and collecting the tax under the statute set out above but denied that the statute violated the Constitution of the United States, the Organic Act of Puerto Rico, or the Reciprocal Commercial Trade Agreement. He further alleged that round and square stick matches have different characteristics of a substantial nature sufficient to justify the Legislature of Puerto Rico in classifying them differently for purposes of taxation.

The case having been submitted on the pleadings and the stipulation, the District Court held that the classification which made a distinction between round and square matches was unreasonable in that it bore no substantial or fair relation to the object or purpose of a revenue act and that it violated the XIV Amendment to the Constitution of the United States, the Organic Act of Puerto Rico, and the Reciprocal Commercial Trade Agreement. It further held, however, that the invalidation of the discriminatory features of subdivision 7 of Section 16 did not void the entire section but only the amount of the invalid discrimination of 20 cents per gross. It, therefore, allowed the plaintiff a refund in that amount, and entered judgment in the sum of $17,600 with interest thereon from the date of filing of the suit to the date of payment.

From this judgment, both plaintiff and defendant appeal. The plaintiff alleges that the District Court was in error in holding that it was subject to a tax of 10 cents per gross and in refusing to order a refund of the entire 30 cent tax collected from it. The defendant claims that the court erred in invalidating the said subdivision, asserting that the classification is reasonable; that the said subdivision does not violate the Constitution of the United States, the Organic Act of Puerto Rico, or the Reciprocal Commercial Trade Agreement, and that the District Court should not have allowed the plaintiff any refund whatever.

I think that the judgment of the District Court should be affirmed. In the exercise of its legislative power the Legislature of Puerto Rico is limited by the provisions of its Organic Act and any other applicable laws of Congress, since it can only exercise such powers as have been delegated to it by Congress pursuant to Article IV, § 3, cl. 2 of the Constitution of the United States, which deals with the government of the territories. Domenech v. National City Bank, 1935, 294 U.S. 199, 55 S.Ct. 366, 79 L.Ed. 857; Haavik v. Alaska Packers' Association, 1924, 263 U.S. 510, 44 S.Ct. 177, 68 L.Ed. 414; Sancho v. Corona Brewing Corporation, 1 Cir., 1937, 89 F.2d 479, certiorari denied, Corona Brewing Co. v. Bonet, 1937, 302 U.S. 699, 58 S.Ct. 18, 82 L.Ed. 540. Since the due process and equal protection clauses of the V and XIV Amendments to the Constitution of the United States are identical with Section 2, par. 1, of the Organic Act of Puerto Rico, supra, discussion of whether they extend to Puerto Rico is unnecessary, and the conformity of said subdivision 7 of Section 16 of the Internal Revenue Law with the Organic Act is all that need here be considered. Sancho v. Bacardi Corporation of America, 1 Cir., 1940, 109 F. 2d 57.

Section 2, par. 1, of the Organic Act of Puerto Rico provides that "no law shall be enacted in Porto Rico which shall deprive any person of * * * property without due process of law, or deny to any person therein the equal protection of the laws". 39 Stat. 951 (1917) 48 U.S.C.A. § 737. This clause, like the XIV Amendment to the Constitution of the United States, in no way limits the power of the Legislature of Puerto Rico to classify the objects of legislation or the persons affected by it so as to subject different classes to differing rates of taxation. New York Rapid Transit Corp. v. New York, 1938, 303 U.S. 573, 58 S.Ct. 721, 82 L.Ed. 1024; Stebbins v. Riley, 1925, 268 U.S. 137, 45 S.Ct. 424, 69 L.Ed. 884, 44 A.L.R. 1454; Magoun v. Illinois Trust & Savings Bank, 1898, 170 U.S. 283, 18 S.Ct. 594, 42 L.Ed. 1037. However, such classification must be reasonably related to the object of the legislation and must be based upon some distinction which can rationally and fairly be made the reason for different taxation. New York Rapid Transit Corp. v. New York, supra; Magoun v. Illinois Trust & Savings Bank, supra; Gulf, C. & S. F. Ry. Co. v. Ellis, 1897, 165 U.S. 150, 17 S.Ct. 255, 41 L.Ed. 666. The first question here is whether the classification of matches between round and square and the differing taxation based thereon is such a

reasonable classification based on such a distinction. If not, the classification is void. Smith v. Cahoon, 1931, 283 U.S. 553, 51 S.Ct. 582, 75 L.Ed. 1264; Southern Ry. Co. v. Greene, 1910, 216 U.S. 400, 30 S.Ct. 287, 54 L.Ed. 536, 17 Ann.Cas. 1247.

There is no necessity for considering separately the plaintiff's contention that the tax in question violates the uniformity clause of Section 2 of the Organic Act[2] since there is no question but that the act applies equally in all parts of Puerto Rico, and all matches in each class are treated the same. Therefore, if the classification between round and square matches is valid, the tax is not obnoxious to the uniformity clause. Stebbins v. Riley, supra; Sanchez Morales & Co. v. Gallardo, 1 Cir., 1927, 18 F.2d 550.

The distinction between round and square matches is not a reasonable classification which can be used as a basis for different rates of taxation. The only distinctions between round and square stick matches apparent on the record are the facts that the round matches are die-cut from soft pine while the square ones are severed directly from hardwood, and that the present cost, to a manufacturer of square stick matches, of producing round stick matches is greater than that of producing square stick matches. These factors, however, are in no way made the basis for the discrimination between round and square matches in the statute.

Paragraph one of subdivision 7 of Section 16 levies a tax on all matches irrespective of type, "whether sulphur, safety, friction or fusee, or by whatever name known". Following this comprehensive introduction, the statute proceeds to make a classification not based on any peculiar quality or grade of the matches involved, but solely upon the shape or condition of the stick, i. e., whether round or square, and whether colored or uncolored. The classification is not based on retail price, for both types sell for one cent per box. Though the plaintiff's matches are severed from aspen in a way different from the Puerto Rican matches, which are die-cut from pine, the distinction is not founded on this difference between material or method, for given similar wood and manufacture, the tax differential would continue to discriminate if the plaintiff's matches were square. The difference in cost of production is immaterial for a like reason,

and the only classifications relied on are those of shape and color. These are unreasonable. There must be no arbitrary selection; the mere fact of classification is not sufficient. Gulf, C. & S. F. Ry. Co. v. Ellis, supra.

It is significant that the classification between round and square matches is made only in one narrowly defined category, matches packed in wooden outers or shucks containing not less than 25 nor more than 50 matches per box. If the wooden box contains less than 25 matches, round and square matches are taxed alike; if the wooden box contains more than 50 matches, round and square matches are taxed alike; if the box is made of material other than wood, regardless of the number of matches in the box, round and square matches are taxed alike. Only where they are packed in wooden boxes containing between 25 and 50 matches is there any classification or distinction made between round and square matches. If there were any validity in the differentiation, it would appear to be equally applicable to boxes containing less or more than 50 matches or packed in other than wooden outers or shucks. We do not pass upon the validity of classifying matches for taxation purposes into those in wooden boxes and those packed in other ways, nor upon the validity of different methods of taxation depending on whether the box contains not less than 25 nor more than 50 matches, or less than 25 or more than 50. A decision upon these distinctions is not necessary to the disposition of this case, such distinctions being here material only to show that the tax differential between round and square matches is not carried into all the classifications made. The arbitrariness of the division appears more clearly in the light of the agreed statement that the only wooden matches produced in Puerto Rico are round stick matches packed in wooden shucks; and, indeed, the defendant, to sustain the classification, relies almost entirely on the asserted power of the Legislature to make classifications to stimulate local industries.

Assuming as true the defendant's contention that the Legislature of Puerto Rico in legislating locally for the Island can do anything which Congress could do except insofar as restrained by the Organic Act or the Constitution of the United States, treaties, or other applicable laws of Con-

---

[2] "Section 2 (Par. 22) That the rule of taxation in Porto Rico shall be uniform."

gress, it does not follow that Puerto Rico can impose a discriminatory excise tax designed to foster Island industry at the expense of that of continental United States or foreign countries. The proviso of Section 3 of the Organic Act as amended[3], 44 Stat. 1418 (1927) 48 U.S.C.A. § 741a, expressly provides that the internal revenue taxes levied by Puerto Rico may not discriminate between articles imported from the United States or foreign countries, and similar articles produced or manufactured in Puerto Rico. And Article VI of the Reciprocal Commercial Trade Agreement between the United States and Sweden[4], 49 Stat. 3759 (1935), likewise exempts imports from that country from internal taxes other or higher than those payable on like articles of national or other foreign origin. These provisions were designed to procure complete equality of treatment, as far as internal taxation is concerned, between similar articles of domestic and foreign make. Since I conclude that, under Section 2, par. 1, of the Organic Act, round and square stick matches must be treated alike for purposes of taxation, the above provisions would require that the plaintiff's square stick matches, though made in Sweden, must be treated exactly as are domestic square stick matches, and, therefore, must be taxed exactly as are domestic round stick matches. This would seem to dispose of the defendant's contention that a proper basis for the classification is to stimulate local industry by putting extra burdens on foreign manufacturers.

It is stipulated that the only wooden matches produced in Puerto Rico are round stick matches made by the Pan American Match Company, a Puerto Rican corporation. It is quite obviously and avowedly the purpose of the Revenue Law to encourage this local Puerto Rican industry at the expense of foreign manufacturers of matches. This advantage to the Puerto Rican manufacturer of round stick match-

es will persist as long as the Swedish manufacturers are unable to produce round stick matches as cheaply as they can at present produce square stick matches. But a tax classification designed thus to give an advantage to Puerto Rican manufacturers, though it might otherwise be upheld as resting on a rational basis grounded on a reasonable economic and social policy, can no longer be supported on that basis in view of the proviso of Section 3 of the Organic Act and the provisions of Article VI of the Reciprocal Commercial Trade Agreement. In paramount declarations of policy, Congress and the treaty-making power have in effect declared that tax discriminations between like or similar articles of Puerto Rican and non-Puerto Rican manufacture are unreasonable. Therefore, the only substantial basis which the defendant urges in support of holding the classification to be reasonable in the case at bar is inadmissible.

In the absence of any peculiar justification for control or discrimination, classification made either under the police or taxing powers of the state must be reasonable in relation to the subject and based upon substantial differences. New York Rapid Transit Corp. v. New York, supra; West Coast Hotel Co. v. Parrish, 1937, 300 U.S. 379, 57 S.Ct. 578, 81 L.Ed. 703, 108 A.L.R. 1330; Nebbia v. New York, 1934, 291 U.S. 502, 54 S.Ct. 505, 78 L.Ed. 940, 89 A.L.R. 1469. The recent decision of the Supreme Court in Madden v. Commonwealth of Kentucky, 1940, 309 U.S. 83, 60 S.Ct. 406, 84 L.Ed. 590, 125 A.L.R. 1383, in no way relaxes these requirements since it simply decided that the classification there made was reasonably necessary to an enforceable system of intangible taxation. No such justification exists here. The classification is arbitrary and not reasonably related to the objects of a statute designed to raise revenue, and such classification intended to discriminate between local and outside industries would be invalid.

---

[3] "Section 3. And it is further provided, That the internal-revenue taxes levied by the Legislature of Porto Rico in pursuance of the authority granted by this Act [chapter] on articles, goods, wares, or merchandise may be levied and collected as such legislature may direct, on the articles subject to said tax, as soon as the same are manufactured, sold, used, or brought into the island: Provided, That no discrimination be made between the articles imported from the United States or foreign countries and similar articles produced or manufactured in Porto Rico."

[4] "Articles the growth, produce or manufacture of the United States of America or Sweden, shall, after importation into the other country, be exempt from all internal taxes, fees, charges or exactions other or higher than those payable on like articles of national origin or any other foreign origin."

Subdivision 7 of Section 16 of the Internal Revenue Law of Puerto Rico insofar as it distinguishes between round and square stick matches is contrary to Section 2, par. 1, and to Section 3 of the Organic Act of Puerto Rico, and is therefore void. Cf. Liggett Co. v. Lee, 1933, 288 U.S. 517, 53 S.Ct. 481, 77 L.Ed. 929, 85 A.L.R. 699; Smith v. Cahoon, supra; Frost v. Corporation Commission, 1929, 278 U.S. 515, 49 S.Ct. 235, 73 L.Ed. 483; Blanco v. Sancho Bonet (Sup. Ct. of Puerto Rico, July 22, 1939).

However, even if the classification should be considered not to violate the "due process" clause of Section 2 of the Organic Act, the subsection would still be invalid under Section 3 of the Organic Act, as amended, prohibiting discrimination "between the articles imported from the United States or foreign countries and similar articles produced or manufactured in Puerto Rico". A classification which would not be considered so unreasonable as to deny the equal protection of the laws can still be invalid as forbidden discrimination against foreign matches in favor of domestic ones.

An act which in terms discriminated between Swedish and Puerto Rican matches would clearly violate Section 3 of the Organic Act as amended, just as discrimination in terms against the products of one state or country in favor of those of the enacting state is a violation of Art. I., sec. 8 of the Constitution of the United States. Hale v. Bimco Trading Co., 1939, 306 U. S. 375, 59 S.Ct. 526, 83 L.Ed. .771; Darnell & Son Co. v. Memphis, 1908, 208 U. S. 113, 28 S.Ct. 247, 52 L.Ed. 413; Walling v. Michigan, 1886, 116 U.S. 446, 6 S.Ct. 454, 29 L.Ed. 691; Welton v. Missouri, 1875, 91 U.S. 275, 23 L.Ed. 347. The courts have been zealous to prevent the use of the taxing power to further discrimination. Chalker v. Birmingham & N. W. Ry. Co., 1919, 249 U.S. 522, 39 S.Ct. 366, 63 L.Ed. 748; see Pennsylvania v. West Virginia, 1923, 262 U.S. 553, 596, 43 S.Ct. 658, 67 L.Ed. 1117, 32 A.L.R. 300.

But it is argued that there is no discrimination in the present statute since foreign and domestic round matches are taxed alike and foreign and domestic square matches are likewise taxed equally. In terms, this is true; but from the stipulated facts it is evident that no square matches are produced in Puerto Rico but come exclusively from Sweden and the United States while round matches are almost entirely the product of Puerto Rico. To all intents and purposes, therefore, the statute is the same as though it read "all Swedish and United States matches packed in wooden boxes containing not less than 25 nor more than 50 matches shall be taxed 30 cents while all Puerto Rican matches similarly packed shall be taxed 10 cents". The intent to protect local matches against the competition of a type of match produced only abroad is made the sole justification of the defendant.

Where a statute in terms is non-discriminatory but its avowed intent and necessary effect is to favor local products over similar foreign products, it is the duty of the courts to declare the statute void. Bethlehem Motors Corp. v. Flynt, 1921, 256 U.S. 421, 41 S.Ct. 571, 65 L.Ed. 1029; Brimmer v. Rebman, 1891, 138 U.S. 78, 11 S.Ct. 213, 34 L.Ed. 862; Minnesota v. Barber, 1890, 136 U.S. 313, 10 S.Ct. 862, 34 L.Ed. 455; cf. Askren v. Continental Oil Co., 1920, 252 U.S. 444, 450, 40 S.Ct. 355, 64 L.Ed. 654; Chalker v. Birmingham & N. W. Ry. Co., supra. The cited cases indicate that if this were not done, provisions against discrimination could be easily circumvented with a consequent undesirable increase in trade barriers which the provisions were designed to prevent.

Round and square matches are without question like or similar articles in the consuming market. They are competitive products. The purpose and necessary effect of the subsection is to favor local round matches against similar foreign square matches. This is directly opposed to Section 3 of the Organic Act as amended and under the cases cited above must be declared invalid.

The cases cited by the defendant do not uphold his contention that it is permissible to discriminate against nondomestic products. Mahoney v. Triner Corp., 1938, 304 U.S. 401, 58 S.Ct. 952, 82 L.Ed. 1424, and State Board v. Young's Market Co., 1936, 299 U.S. 59, 57 S.Ct. 77, 81 L.Ed. 38, are decided exclusively on the ground that discrimination as to liquor is expressly authorized by the XXI Amendment to the Constitution of the United States. The peculiar legislative power to regulate the liquor business is sufficient also to differentiate Sancho v. Bacardi Corporation of America, 1 Cir., 1940, 109 F.2d 57, from the case before us, as well as the fact that the classification therein was found to be

reasonable in order to protect the renascent liquor industry of the Island from competition by foreign capital, so as to avoid the increase and growth of financial absenteeism. That case is by no means authority for the proposition that tax differentials between like or similar articles of Puerto Rican and non-Puerto Rican manufacture may be made solely for the purpose of promoting local industry.

■ There remains the question whether the invalidity of the attempted discrimination voids the entire portion of the subsection dealing with matches or whether the discrimination only need be removed. The District Court held that only the differential of 20 cents per gross on square stick matches was void, leaving a tax of 10 cents per gross applicable to both round and square sticks. We agree with this determination.

Section 108 of the Internal Revenue Law of Puerto Rico has the usual provision that if any provision of the Act or its application to any person or circumstances be declared invalid, the remainder of the Act and the application of those provisions to other persons or circumstances should not be affected. Such a legislative declaration indicates that if any of the provisions are found invalid, the Legislature would have passed the Act without such provisions and desires the Act to be considered as not containing them. Williams v. Standard Oil Co., 1929, 278 U.S. 235, 49 S.Ct. 115, 73 L.Ed. 287, 60 A.L.R. 596. It is elementary that where part of a statute is invalid that which is unobjectionable will stand if the Legislature did not intend the good and bad portions to stand or fall together. Bowman v. Continental Oil Co., 1921, 256 U.S. 642, 41 S.Ct. 606, 65 L.Ed. 1139; Loeb v. Columbia Township Trustees, 1900, 179 U.S. 472, 489, 21 S.Ct. 174, 45 L.Ed. 280.

The sole objection to the tax in this case is that it subjects the plaintiff's square matches to a discriminatory assessment of 20 cents over that levied on round matches. The discrimination only is void. If the entire tax on square stick matches is invalidated, the result will be a discrimination against round stick matches, still subject to a 10 cent tax. However, it is the plaintiff's contention that, if the 20 cent discrimination is bad, the entire tax on both round and square stick matches packed in wooden boxes should be declared invalid. We cannot agree with this conclusion. An equal tax of 10 cents on both round and square stick matches would be unobjectionable. The greater tax includes the lesser, and the Legislature will be presumed to have intended to tax at least as much as it could constitutionally have taxed. Singer Sewing Machine Co. v. Brickell, 1914, 233 U.S. 304, 34 S.Ct. 493, 58 L.Ed. 974. The plaintiff is not entitled to complete freedom from taxation because the Legislature attempted to subject it to discrimination. Cf. Merrill v. Humphrey, 1871, 24 Mich. 170. All that the plaintiff is entitled to is to be taxed at no higher rate than are those in like circumstances. Blanco v. Sancho Bonet (Sup. Ct. of Puerto Rico, July 22, 1939); Benjamin Franklin Thrift Stores, Inc. v. Henneford, 1936, 187 Wash. 472, 60 P.2d 86; Wiley v. Parmer, 1848, 14 Ala. 627; cf. State v. Lee, 1935, 122 Fla. 639, 166 So. 249; Century Oil Co. v. Department of Agriculture, 1924, 112 Neb. 73, 198 N.W. 569. See Miles v. Department of Treasury, 1935, 209 Ind. 172, 195, 199 N.E. 372, 382, 101 A.L.R. 1359; (1937) 50 Harv. L. Rev. 535. A similar result in an analogous situation is reached where assessments are made above the authorized limits or at a discriminatory valuation; only the illegal or discriminatory excess is invalidated. Cottle v. Union Pacific R. Co., 8 Cir., 1912, 201 F. 39; Citizens' National Bank v. Board of Commissioners, 1910, 83 Kan. 376, 111 P. 496; Fairley v. Duluth, 1921, 150 Minn. 374, 185 N.W. 390, 32 A.L.R. 1258.

This construction of the statute is supported by authority and has the added merit of reason and reliance on substance rather than on form. That the Legislature desired to tax the square matches at least as heavily as the round matches is shown by the fact that in all the internal revenue acts prior to the ones here in question, there had been no classification between round and square matches, all being taxed alike according to the number of matches involved. Clearly by this attempted discriminatory classification, the Legislature exhibited no intention to relieve the square stick matches from the burden imposed on the round ones, but added an extra invalid burden to it. It is this extra imposition only which this court must remove.

It follows, therefore, that the plaintiff is entitled to a refund of 20 cents per gross from the amount collected by the defendant. It remains subject only to a nondiscriminatory excise tax of 10 cents per gross. The judgment of the District Court should, therefore, be affirmed.

The judgment of the District Court is affirmed.

MAGRUDER, Circuit Judge (concurring).

With some misgivings, I concur in the result. I do not think that the classifications in the challenged provision of the Internal Revenue Law of Puerto Rico are invalid under Section 2 of the Organic Act, 39 Stat. 951, 48 U.S.C.A. § 737, providing "that no law shall be enacted in Porto Rico which shall deprive any person of life, liberty, or property without due process of law, or deny to any person therein the equal protection of the laws". I question whether the provisions of the Reciprocal Commercial Trade Agreement with Sweden can be invoked by the present plaintiff, a Puerto Rican corporation.

But the classifications under review violate the spirit, and I think the letter, of the proviso in Section 3 of the Organic Act, as amended, 44 Stat. 1418, 48 U.S.C.A. § 741a, reading as follows: "That the internal-revenue taxes levied by the Legislature of Porto Rico in pursuance of the authority granted by this Act [chapter] on articles, goods, wares, or merchandise may be levied and collected as such legislature may direct, on the articles subject to said tax, as soon as the same are manufactured, sold, used, or brought into the island: Provided, That no discrimination be made between the articles imported from the United States or foreign countries and similar articles produced or manufactured in Porto Rico."

The Treasurer contends that the foregoing proviso was not intended to deprive the legislature of the power of classification within the limitations of due process, equal protection of the laws, and the rule of uniformity in taxation; that however narrow the classification might be, the proviso is not offended if articles imported from the United States or foreign countries, and falling within such classification, are taxed at the same rate as articles manufactured in Puerto Rico, falling within the same classification. If this argument is accepted, then there is no forbidden discrimination, because round stick matches imported into Puerto Rico from the United States or abroad are taxed at the same rate as round stick matches made in Puerto Rico, and square stick matches imported from the United States or abroad are taxed at the same rate as square stick matches made in Puerto Rico.

It is true, the revenue law in question does not in terms discriminate between articles of domestic and non-Puerto Rican manufacture. Nevertheless, it seems to me, the Organic Act is violated when the legislature, as in this case, devises an extremely narrow classification that has no purpose or significance other than to confer a tax advantage upon Puerto Rican manufacturers of a given article to the prejudice of foreign manufacturers of a similar article.

It appears that the only wooden matches now produced in Puerto Rico are round stick matches made by the Pan American Match Company, a Puerto Rican corporation organized in 1935. One infers that the square stick matches such as are produced in Sweden could not profitably be produced in Puerto Rico. Swedish manufacturers have not yet been able to manufacture round stick matches as cheaply as square stick matches. Perhaps Swedish manufacturers may in the future succeed in overcoming the competitive handicap after expenditure of time and money in experimenting with new methods of manufacture; but that possibility does not negative the discrimination in the revenue law in its present application.

The purpose of the legislature is frankly avowed by the Treasurer in his brief. The revenue law is one of a series of enactments designed to foster desperately needed local manufacturing industries. As stated in the Treasurer's brief:

"Substantially, the question presented * * * is of the power of the legislature of Puerto Rico, in the exercise of its local police and taxing powers, to make such classifications of commodities [in this intance, matches] for the purpose of insular excise taxes, as will tend to foster the development of local manufacturing industries.

"In this particular case it appears that the intent of the legislature was thus to foster the manufacture of a type of matches (round matches) being produced in the Island, locally, as well as elsewhere [in the United States mainland and capable of production likewise in Sweden], as against a type (square matches) being produced only abroad, in Sweden."

Thus the explanation of the classification between round and square stick match-

es is that the former are made in Puerto Rico and the latter abroad. But the prohibition against discrimination in the proviso of Section 3 of the Organic Act would seem to be ineffective indeed, if the legislature may seize upon some minute and immaterial difference between an article of Puerto Rican manufacture and a similar article of non-Puerto Rican manufacture as a basis of establishing a tax differential favoring the local manufacturer.

The fostering of local industries is normally a legitimate legislative purpose. But under the limitation in the Organic Act the Puerto Rican legislature cannot pursue this policy to the extent of prescribing tax differentials in the revenue laws designed to favor Puerto Rican manufacturers as against non-Puerto Rican manufacturers of similar articles. Sancho v. Bacardi Corp., 1 Cir., 109 F.2d 57, did not involve this particular provision of the Organic Act.

I agree that the taxpayer is entitled to be relieved of the tax only to the extent of the discrimination, as Judge MAHONEY points out in the latter part of his opinion.

PETERS, District Judge (dissenting).

I feel obliged to dissent from the conclusion of the majority of the court because I cannot find sufficient justification for invalidating the action of the Puerto Rican Legislature. I agree with Judge MAGRUDER that there is no violation of Section 2 of the Organic Act, nor do I think the provisions of the Swedish Trade Agreement can be invoked.

As to Section 3 of the Organic Act, it seems to me that there is no violation. The classification made in the tax on matches appears to me to be reasonable, based, as it is, on differences in shape, method of manufacture and nature of the material; but, assuming that different minds may reasonably take different views on that point, I think the opinion of the Legislature should prevail.

The fact that the classification may be called narrow does not, as I look at it, authorize us to say it should not be applied. Such discrimination as may result is incidental to the principal purpose of the act which is the legitimate one of fostering home industries.