**UNITED STATES BREWERS ASSOCIATION, INC., et al., Plaintiffs, Appellants,**

v.

**Julio Cesar PEREZ, etc., et al., Defendants, Appellees.**

**No. 78–1393.**

United States Court of Appeals, First Circuit.

Argued Jan. 4, 1979.
Decided Feb. 21, 1979.

---

States mainland beer producers and a trade association representing the producers of 95 per cent of the beer sold in the United States, to restrain Puerto Rican officials from collecting an increase in the internal revenue tax on beer imposed by Act 37 of July 13, 1978. In the alternative, as set forth in the amended complaint, the plaintiffs sought to enjoin defendants from applying that Act's exemption of "beer produced by persons whose total production during its most recent year has not exceeded thirty-one million (31,000,000) wine gallons". Plaintiff-appellants contend that the law was intended to and does protect, via its exemption, two local beer producers, thus curtailing competition with beer produced outside of Puerto Rico in violation of 48 U.S.C. § 741a. That provision prohibits Puerto Rico from discriminating by way of its taxing power between articles imported from the United States and other foreign countries and similar articles manufactured in Puerto Rico. Various constitutional infringements are alleged as well.

While describing the taxing statute as *prima facie* in violation of 48 U.S.C. § 741a, the district court held that the suit was controlled by the Butler Act, 48 U.S.C. § 872, which provides that:

> "No suit for the purpose of restraining the assessment or collection of any tax imposed by the laws of Puerto Rico shall be maintained in the District Court of the United States for Puerto Rico."

Although the Butler Act constitutes a flat prohibition of such suits, the court adopted a more flexible approach akin to 28 U.S.C. § 1341[1] and held that "the Butler Act cannot preclude the enjoinment of a Commonwealth's tax where a clear violation of 48 U.S.C. § 741a is established, and where there exists no plain, speedy and efficient remedy in the local forums."[2] Expressing

Stanley L. Feldstein, Old San Juan, P. R., with whom Gustavo A. Gelpi, Feldstein, Gelpi, Hernandez & Castillo, Old San Juan, P. R., and Federico A. Cordero, Carolina, P. R., were on brief, for plaintiffs, appellants.

Federico Cedo Alzamora, Asst. Sol. Gen., Dept. of Justice, San Juan, P. R., with whom Hector A. Colon Cruz, Sol. Gen., San Juan, P. R., was on brief, for defendants, appellees.

Before COFFIN, Chief Judge, CAMPBELL and BOWNES, Circuit Judges.

COFFIN, Chief Judge.

This is an action for declaratory and injunctive relief, brought by five United

---

1. 28 U.S.C. § 1341, also a tax injunction act but applicable to the states rather than the Commonwealth of Puerto Rico, provides that:

   "The district courts shall not enjoin, suspend or restrain the assessment, levy or collection of any tax under State law where a plain, speedy and efficient remedy may be had in the courts of such State."

2. The district court's reluctance to read the Butler Act as an absolute ban, construing it instead "in a manner consistent with general equitable principles" was generally in accord

uncertainty about the availability and adequacy of local remedies, the court retained jurisdiction but directed the plaintiffs to seek "a decision of the Commonwealth Courts as to the issues raised in this case, and particularly, concerning the existence of an adequate right of action." Plaintiffs did so, and the Superior Court of Puerto Rico has issued a ruling, declaring Act 37 of July 13, 1978 constitutional and otherwise valid and dismissing the complaint. *United States Brewers Association v. Perez,* Civ.No. PE–78–1137 (Dec. 12, 1978). At oral argument appellants, appropriately, conceded that the availability of a local remedy thus has been demonstrated. Therefore, the only issue before us on appeal is whether the Butler Act should be applied to this suit to bar jurisdiction.

Appellants argue that neither the language nor the legislative history of the Butler Act supports its application to the relief sought in their amended complaint, namely, that the court declare invalid those portions of the Act exempting smaller producers from the heightened tax and enjoin defendants from collecting a lower tax from local producers than that collected from beer producing plaintiffs outside of Puerto Rico. They maintain that the concern which prompted passage of the Butler Act and 28 U.S.C. § 1341, that the fiscal operations of a state would be crippled if a taxpayer could refuse to pay his taxes and then commence federal litigation, *see Tully v. Griffin,* 429 U.S. 68, 73, 97 S.Ct. 219, 50 L.Ed.2d 227 (1976); *Matthews v. Rodgers,* 284 U.S. 521, 525–26, 52 S.Ct. 217, 76 L.Ed. 447 (1932); *United States v. State Tax Commission,* 481 F.2d 963, 973 (1st Cir. 1973); *Sancho v. National City Bank of New York,* 112 F.2d 998, 998–99 (1st Cir. 1940), is not implicated where, as here, a party asks that a state be required to equalize its taxing scheme by collecting a greater rather than a lesser amount of taxes then it

has legislated. In sum, they conclude that the district court erred by failing to distinguish between restraining payment of a tax and restraining application of an exemption from a tax.

We disagree. Contrary to appellants' narrow view of the statute, it might well be proper to apply the Butler Act beyond its literal terms to encompass their suit to enjoin enforcement of a tax exemption. We base our decision instead, however, on the considerations which underlie 28 U.S.C. § 1341 and the Butler Act, *see Great Lakes v. Huffman,* 319 U.S. 293, 299, 63 S.Ct. 1070, 87 L.Ed. 1407 (1943), "equity practice, . . . principles of federalism . . . and the imperative need of a State to administer its own fiscal operations." *Tully v. Griffin,* 429 U.S. 68, 73, 97 S.Ct. 219, 222, 50 L.Ed.2d 227 (1976); *see Paul Smith Construction v. Buscaglia,* 140 F.2d 900, 901–02 (1st Cir. 1944).

Those considerations would be ill served by the technical distinction urged by appellants in this case. The requested injunction, restraining the Commonwealth from collecting a lower tax from those exempted from Act 37, could be framed in two ways, either by ordering the state not to collect the tax increase or by requiring the state to levy the tax hike on exempt as well as nonexempt parties. As appellants apparently recognized when they amended their complaint, the first clearly constitutes relief proscribed by the Butler Act, as it would "restrain the assessment or collection of any tax", 48 U.S.C. § 872. The second, we believe, would be no less improper. Appellants are willing to pay the increased tax, but only on the condition that the Commonwealth revoke the exemption and assess an equal tax on smaller producers. We fail to see how that position and federal litigation aimed at validating it do not disrupt the orderly collection and administration of state taxes. Inequalities in a taxing sys-

---

with the limited case law applying that Act. *See Paul Smith Construction Co. v. Buscaglia,* 140 F.2d 900, 901 (1st Cir. 1944); *Sancho v. National City Bank of New York,* 112 F.2d 998, 1003 (1st Cir. 1940); *Everlasting Development*

*Corp. v. Sol Luis Descartes,* 95 F.Supp. 954, 958 (D.P.R.1951), *aff'd on other grounds,* 192 F.2d 1 (1st Cir. 1951), *cert. denied,* 342 U.S. 954, 72 S.Ct. 626, 96 L.Ed. 709 (1952); *Boyce v. Buscaglia,* 77 F.Supp. 753, 756–57 (D.P.R.1948).

tem, endemic to the levy of any tax or exemption therefrom, simply may not be remedied in this fashion.

Furthermore, an order of a federal court requiring Commonwealth officials to collect taxes which its legislature has not seen fit to impose on its citizens strikes us as a particularly inappropriate involvement in a state's management of its fiscal operations. *See also Cornelius v. Benevolent Protective Order of Elks,* 382 F.Supp. 1182, 1193–94 (D.Conn.1974). This is neither a case in which a court orders reluctant state officials to collect taxes authorized by the citizens of the state, *see Hargrave v. McKinney,* 413 F.2d 320, 326 (5th Cir. 1969), nor one in which officials have failed to perform their "special responsibility" to levy taxes for a crucial public purpose and consequently have violated federal constitutional rights, *see Griffin v. County School Board of Prince Edward County,* 377 U.S. 218, 232–33, 84 S.Ct. 1226, 12 L.Ed.2d 256 (1964). As appellees point out, the invalidation of the exemption in Act 37 is an awkward and heavy-handed remedy, producing a broad taxing statute for which the Commonwealth may have believed there was no need or which was actually detrimental to its domestic policy. Sound equity practice and a concern for interests of federalism thus bar both the injunctive and declaratory relief sought by appellants. *See Great Lakes v. Huffman, supra.*

This interference is needless as well, for "the asserted federal right may be preserved without it", *Matthews v. Rodgers, supra,* 284 U.S. at 525–26, 52 S.Ct. at 219. Appellants' contention that Act 37 contravenes 48 U.S.C. § 741a has been heard and rejected in the Superior Court of Puerto Rico. The next step for appellants is an appeal to the Supreme Court of Puerto Rico and then, if necessary, to seek review in the United States Supreme Court pursuant to 28 U.S.C. § 1257.

The district court retained jurisdiction over this case while the plaintiff-appellants sought, pursuant to its order, a decision in the Commonwealth courts. As the appellants have done so and there no longer exists any uncertainty about the willingness of those courts to address the merits of the claims, the case is remanded to the district court so that it may dismiss the case for want of jurisdiction.

*It is so ordered.*